Filed 2/10/24  P. v. Hardin CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> TONY HARDIN, <br><br>     Defendant and Appellant. | B324483 <br><br> (Los Angeles County <br> Super. Ct. No. A893110) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Victor D. Martinez, Judge.  Affirmed.

David Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Tony Hardin appeals from a postjudgment order denying his Penal Code former section 1170.95 (now § 1172.6)[1] petition with respect to his first degree murder conviction. Hardin contends the superior court erred in denying his petition at the prima facie stage after deciding Hardin did "not have a right to re-file an identical petition" and "was the actual killer." The People concede and we agree Hardin was not procedurally barred from filing a second petition. However, we conclude the record of conviction conclusively establishes Hardin was the actual killer as a matter of law and affirm the superior court's denial of the petition.

**FACTUAL AND PROCEDURAL BACKGROUND**[2]

A. *Relevant Evidence at Trial*

"The victim, Norma Barber, lived alone in the Casa La Paz apartments. [Hardin] was the nighttime security guard for the

---

[1] Undesignated statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

[2] We recite facts from the opinion on Hardin's direct appeal from his conviction. (*People v. Hardin* (July 19, 1993, B051873) [nonpub. opn.].) We provide a summary of the relevant facts for background purposes only. (See *People v. Lee* (2023) 95 Cal.App.5th 1164, 1183 ["By logical extension, the factual summary also may not be used to determine a petitioner's eligibility at the prima facie stage" under § 1172.6]; *People v. Flores* (2022) 76 Cal.App.5th 974, 988 ["the factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing" under § 1172.6].) In considering this appeal, we do

complex. He also lived in the apartment complex two doors down from the victim. [Hardin] and Ms. Barber were friendly and on occasion socialized in Ms. Barber's apartment. [¶] The last time Ms. Barber was heard from was Tuesday night, April 4, 1989."

On Wednesday, April 5, 1989, Hardin "had possession of several items of Ms. Barber's personal property. At 8:00 a.m. he tried to exchange one of her necklaces for rock cocaine. The drug dealer, Richardson, who testified at trial, stated he dealt only in cash and refused the necklace as payment. Instead he gave [Hardin] cocaine in exchange for a ride to pick up a supply of drugs. At the time [Hardin] was driving Ms. Barber's car which bore the distinctive personal license plate of 'Mabahba.' [¶] After they picked up the drugs, [Hardin] drove the car to a pawn shop in Los Angeles. At the pawn shop [Hardin] exchanged two woman's necklaces, two charms and one woman's ring for $15. He filled out the pawn slip giving his true name of Tony Hardin as well as a thumbprint. At trial the pawn slip with his thumb print was introduced as was the jewelry he pawned which Ms. Barber's son and friends identified as jewelry the victim almost always wore and almost never took off. . . . [¶] [Hardin] purchased more cocaine with the $15 he received from the pawned jewelry.

"Later that evening [Hardin] convinced Richardson to accept a VCR in exchange for cocaine. Richardson testified still later that evening [Hardin] said there was a microwave at a friend's house he wanted to trade for cocaine. Richardson agreed to the exchange and the two men went to Ms. Barber's

_____

not rely on any evidence from the trial or the closing arguments because the transcript of Hardin's trial proceedings is not part of the appellate record.

3

apartment. [Hardin] unlocked the door to her apartment with a key. As [Hardin] held the door open, Richardson went into the apartment, removed various items off the top of the microwave, and carried the microwave out of the apartment.

"In exchange for still more cocaine, [Hardin] lent Richardson Ms. Barber's car to pick up another supply of drugs. Richardson testified [Hardin] had a key to the car."

"Concerned she did not answer his telephone calls, on Saturday night, April 8, 1989, Ms. Barber's son came to her apartment. He noticed her car was not parked in its usual parking stall, her daily newspapers dating from Wednesday, April 5, 1989, were stacked unread at her patio door and the deadbolt on her apartment door was not locked. Inside the apartment he discovered the VCR and microwave missing and eventually discovered his mother's body underneath the bed. She had bruises on her head and chest. She had ligature marks on her neck and on her wrists. Her legs were bound with a belt. Her shorts and pantyhose were pulled down around her knees and her t-shirt and robe were pulled up to her breasts. There were small blood stains on her clothes and bed clothes and some blood on her left hand and under her fingernail. There were other stains on her t-shirt and shorts that appeared to be urine.[3]"

"An assortment of debris was discovered on her body: several head, body and pubic hairs probably originating from the victim, plant debris, lint and fabric fibers. There were also three pubic hairs whose donors could not be identified. Two of these

---

[3] Tests of the blood stains proved inconclusive and tests to detect whether a sexual assault occurred were negative.

hairs were found in the panty portion of the victim's pantyhose and one partial hair was found on the victim's thigh. Both sides' experts agreed the hairs were likely pubic hairs. The experts further agreed the hairs did not originate from the victim, her son, Richardson or [Hardin]."

"The coroner determined Ms. Barber died of manual strangulation and the binding marks on her neck and wrists occurred post mortem.

"After securing the apartment the police interviewed various witnesses who had been on the scene including the son, the apartment managers and [Hardin]. The police also interviewed other residents of the apartment complex. The police interviewed [Hardin] in his apartment. In his unit police saw Budweiser beer cans and Vantage cigarette butts which, after talking to the victim's son, police suspected belonged to the victim. Police also noticed a pair of handcuffs laying on a room divider.

"Within hours of discovering Ms. Barber's body her vehicle was discovered parked a few blocks from the apartment complex. The police dusted the car for prints. A fingerprint retrieved from the interior window of the driver's side of the car matched [Hardin's] prints. [Hardin] was arrested for the murder of Ms. Barber on May 2, 1989." (*People v. Hardin* (July 19, 1993, B051873) [nonpub. opn.] (*Hardin*).)

B.     *The Charges*

The People charged Hardin in an amended information with murder (§ 187), residential robbery (§ 211), two counts of burglary (§ 459), and grand theft of an automobile (former § 487(3)). The People alleged the murder occurred between

5

April 4 and April 8, 1989; the robbery occurred on or about April 4; one burglary occurred on or about April 4; the second burglary occurred on or about April 5; and the theft of the automobile occurred on or about April 5.

As to the murder count, the People alleged Hardin committed the murder while engaged in the commission of robbery (§ 190.2, subd. (a)(17)(A)) and burglary (*id.*, subd. (a)(17)(G)), and inflicted great bodily injury on a person 60 years of age or older (§ 1203.09, subd. (a)).  As to the robbery and burglary counts that occurred on or about April 4, the People alleged Hardin inflicted great bodily injury on a person 60 years of age or older.  No other defendants were charged.

C.     *Relevant Jury Instructions*

The trial took place in March 1990.  As relevant here, the trial court instructed the jury with CALJIC Nos. 8.10 (definition of murder), 8.20 (first degree deliberate and premeditated murder), 8.21 (first degree felony murder), 8.55 (definition of proximate cause for homicide), 8.80 (introduction to special circumstance), 8.81.17 (felony-murder special circumstance), and 17.24.1 (great-bodily-injury special circumstance).

Former CALJIC No. 8.10 (5th ed. 1988) provided, in relevant part, the following definition of murder:  "Every person who unlawfully kills a human being with malice aforethought or during the commission or attempted commission of robbery and/or burglary, a felony inherently dangerous to human life[,] is guilty of the crime of murder in violation of section 187 of the Penal Code.  [¶]  In order to prove such crime, each of the following elements must be proved:  [¶]  1. A human being was killed[,]  [¶]  2. The killing was unlawful, and  [¶]  3. The killing

6

was done with malice aforethought or occurred during the commission or attempted commission of robbery or burglary, a felony inherently dangerous to human life."

CALJIC No. 8.20 further provided, in relevant part, as to first degree murder: "All murder which is perpetrated by any kind of willful, deliberate, and premeditated killing with express malice aforethought is murder of the first degree."

Former CALJIC No. 8.21 (5th ed. 1988) provided as to first degree felony murder: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crime as a direct causal result of . . . robbery and burglary is murder of the first degree when the perpetrator had the specific intent to commit such crime. [¶] The specific intent to commit robbery and/or burglary and the commission or attempted commission of such crime must be proved beyond a reasonable doubt."

Former CALJIC No. 8.55 (5th ed. 1988) provided: "To constitute murder there must be, in addition to the death of a human being, an unlawful act which was a proximate cause of that death. [¶] A proximate cause of a death is a cause which, in natural and continuous sequence, produces the death, and without which the death would not have occurred."

Former CALJIC No. 8.80 (5th ed. 1988) provided, in relevant part: "If you find the defendant in this case guilty of murder of the first degree, you must then determine if one or more of the following special circumstances are true or not true: robbery and burglary."

CALJIC No. 8.81.17 provided, in relevant part: "To find that the special circumstance, referred to in the instructions as murder in the commission of robbery or burglary is true, it must

7

be proved:  [¶]  1a. The murder was committed while the defendant was engaged in the commission of a burglary or a robbery[,] 2. The murder was committed in order to carry out or advance the commission of the crime of burglary or robbery or to facilitate the escape therefrom or to avoid detection."

CALJIC No. 17.24.1 provided:  "It is further alleged that at the time of the commission of the crimes charged . . . that defendant Tony Hardin inflicted great bodily injury upon Norma Barber, a person who was sixty years of age and older.  [¶]  If you find defendant Tony Hardin guilty of the crimes charged . . . you must determine whether or not the truth of this allegation has been proved."

D.      *Verdicts, Sentence, and Appeal*

The jury convicted Hardin of first degree murder, residential robbery, and grand theft of an automobile.  The jury found true the special-circumstance allegation that Hardin committed the murder during a robbery.  The jury also found true that Hardin inflicted great bodily injury on a person 60 years of age or older during the murder and robbery.  The jury found Hardin not guilty of both burglary counts and found not true the burglary special circumstance.

The trial court sentenced Hardin to a state prison term of life without parole for the special-circumstance murder.[4]  We affirmed the judgment on appeal.  (*Hardin, supra*, B051873.)

---

[4]      The trial court also sentenced Hardin to 16 months for the robbery and eight months for the grand theft but stayed the sentences under section 654.

E.    *Section 1172.6 Proceedings*

On March 18, 2019, Hardin, in pro. per., filed a petition under former section 1170.95; the People opposed. Without appointing counsel for Hardin, the court summarily denied Hardin's petition. The court stated, "The court finds that the defendant was found guilty of murder in the first degree."

On January 31, 2022, Hardin filed a second petition under former section 1170.95. The court appointed counsel for Hardin and informed the People that they did not need to file an opposition since there was already one on file. At the hearing, the court denied Hardin's petition without issuing an order to show cause. The court determined Hardin "was the actual killer" because "there w[ere] no requests for the jury to find guilt[] or malice under felony murder and . . . there was no codefendant nor alleged other perpetrator." The court also found that Hardin did "not have a right to re-file an identical petition."

Hardin timely appealed.[5]

## DISCUSSION

A.    *Senate Bill 1437 and Section 1172.6*

Effective 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Reyes* (2023) 14 Cal.5th 981, 984; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and narrowed the felony-murder

---

[5]    Hardin also filed a petition for writ of habeas corpus (case No. B338163) in this court. By separate order, we deny the habeas petition. (*In re Tony Hardin* (Feb. 10, 2025, No. B338163).)

9

rule (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Curiel* (2023) 15 Cal.5th 433, 448-449 (*Curiel*); *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*)).  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on one's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e).  The latter provision now requires the People to prove that the defendant was the actual killer (§ 189, subd. (e)(1)); an aider and abettor to murder who had the intent to kill (*id.*, subd. (e)(2)); or a major participant in an underlying felony listed in section 189, subdivision (a), who acted with reckless indifference to human life as described in subdivision (d) of section 190.2.  (§ 189, subd. (e)(3); see *Curiel*, at p. 448; *People v. Wilson* (2023) 14 Cal.5th 839, 868-869; *People v. Strong*, at p. 708; *People v. Gentile*, at pp. 842-843.)

SB 1437 also provided a procedure (codified in § 1172.6) for "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" to petition the superior court to vacate the conviction and be resentenced on any remaining counts if the petitioner could not now be convicted of murder because of the changes to sections 188 and 189.  (§ 1172.6, subd. (a).)

If a section 1172.6 petition contains all the required information, the sentencing court must appoint counsel to represent the petitioner if requested.  (§ 1172.6, subd. (b)(1)(A), (3); see also *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)  The prosecutor must then file a response to the petition, the

10

petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing that the petitioner is entitled to relief. (§ 1172.6, subd. (c).) If the petitioner makes that showing, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder and resentence the petitioner on any remaining counts. (*Id.*, subds. (c), (d)(1).)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Lewis, supra*, 11 Cal.5th at p. 971; see *Curiel, supra*, 15 Cal.5th at p. 460.) The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971; see *Curiel*, at pp. 463-464.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972; see *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.)

"Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*. ' "[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner,' " ' thereby deeming the petitioner ineligible." (*People v. Harden* (2022) 81 Cal.App.5th

11

45, 52 (*Harden*); see *Curiel, supra,* 15 Cal.5th at p. 460; *Lewis, supra,* 11 Cal.5th at p. 971.) "We review de novo whether the trial court conducted a proper inquiry under section 1172.6, subdivision (c)." (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; see *People v. Lopez* (2022) 78 Cal.App.5th 1, 14 (*Lopez*) [denial at the prima facie stage "is appropriate only if the record of conviction demonstrates that the petitioner is ineligible for relief as a matter of law," which "is a purely legal conclusion . . . we review de novo"].)

B.    *The Superior Court Did Not Err by Denying Hardin's Section 1172.6 Petition*

The superior court denied Hardin's petition on two grounds:  It found Hardin (1) did "not have a right to re-file an identical petition" and (2) "was the actual killer." Hardin contends, the People concede, and we agree the first ground was erroneous.  Because the superior court did not appoint counsel to represent Hardin on his first petition, and because the law has changed since Hardin filed his first petition (see *Lewis, supra,* 11 Cal.5th at p. 957), Hardin's second petition is not procedurally barred as a successive petition.  (See *People v. Farfan* (2021) 71 Cal.App.5th 942, 951 [where the superior court did not appoint counsel to represent the petitioner on his prior, facially sufficient petition, and the second petition "was based on new authority," the second petition "was not procedurally barred as a successive petition"].)

However, the superior court's second ground for denial was correct.  The record of conviction conclusively shows Hardin was convicted as the actual killer.  Thus, Hardin is ineligible for resentencing under section 1172.6 as a matter of law.

12

1. *The jury instructions and verdict conclusively establish the jury found Hardin was the actual killer*

The trial court instructed the jury on two theories of first degree murder: willful, deliberate, and premeditated murder (CALJIC No. 8.20) and felony murder (former CALJIC No. 8.21). The court did not instruct the jury on the natural and probable consequences doctrine or on aiding and abetting.

The jury found Hardin guilty of first degree murder but was not asked to specify a theory of murder. If the jury found Hardin killed Barber with malice, he is ineligible for resentencing because section 1172.6 applies only where malice is imputed based on a person's participation in a crime. (§ 1172.6, subd. (a); see *Lopez*, *supra*, 78 Cal.App.5th at p. 15 ["If the jury found defendant guilty of malice aforethought murder, he would be ineligible for relief as a matter of law because section [1172.6] affords relief only to those convicted of felony murder, murder under the natural and probable consequences doctrine, or murder under any other theory under which malice is imputed based on a person's participation in a crime." (Fn. omitted.)].) And if the jury found Hardin guilty of killing Barber on a felony-murder theory, he is ineligible for resentencing if he was the actual killer. (See § 189, subd. (e)(1); *Harden*, *supra*, 81 Cal.App.5th at p. 53 ["defendants convicted of felony murder are not eligible for relief if they were the actual killer"].) Therefore, the only way Hardin is eligible for relief under section 1172.6 is if the jury convicted him of felony murder on a theory other than as the actual killer. (*Harden*, at p. 54 [petitioner ineligible for relief under § 1172.6 if it was not possible for jury to have found him guilty of felony murder without also finding he personally killed the victim].) An " 'actual killer' " is "the actual perpetrator of the killing, i.e., the

13

person (or persons) who personally committed the homicidal act." (*People v. Vang* (2022) 82 Cal.App.5th 64, 88; accord, *Lopez*, *supra*, 78 Cal.App.5th at p. 4 ["the term 'actual killer' . . . refers to someone who personally killed the victim"]; *People v. Garcia* (2020) 46 Cal.App.5th 123, 152 [same].)

Hardin's record of conviction rules out the possibility the jury convicted him of felony murder on a theory other than as the person who personally killed Barber. (*Harden*, *supra*, 81 Cal.App.5th at pp. 48, 53 [affirming summary denial of § 1172.6 resentencing petition where "the jury instructions and verdicts conclusively establish—with no factfinding, weighing of evidence, or credibility determinations—that in 2001 [defendant] was convicted as the actual killer"].) The jury was *not* instructed that it could convict Hardin as an aider and abettor, accomplice, or major participant in the burglary and robbery who acted with reckless indifference to human life. (See *Harden*, at p. 53 [to determine if jury instructions left open the possibility defendant was convicted on a theory other than being the actual killer, it is helpful to examine instructions jury was *not* given]; but see *Lopez*, *supra*, 78 Cal.App.5th at p. 20 [trial court's decision not to give CALCRIM No. 703 regarding requirements for finding a defendant who is not the actual killer to be guilty of special circumstances murder was "not dispositive" in determining if record of conviction conclusively established defendant's ineligibility for relief under § 1172.6].)

Notably, as to felony murder, the trial court did not give former CALJIC No. 8.27, on vicarious liability, which provided that "[i]f a human being is killed by any one of several persons engaged in the commission or attempted commission of the crime of [robbery or burglary], all persons, who either directly and

14

actively commit the act constituting that crime, or who with knowledge of the unlawful purpose of the perpetrator of the crime and with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the first degree." (Former CALJIC No. 8.27, 5th ed. 1988.)

Likewise, the special circumstance instructions (former CALJIC No. 8.80) omitted any reference to liability based on a theory other than that Hardin was the actual killer. The introductory instruction for those instructions did not include the bracketed language that the Use Note explained "should be given with respect to all special circumstances . . . where there is evidence that the defendant is an aider and abettor rather than the actual killer." (Former CALJIC No. 8.80, 5th ed. 1988.)

Rather, the jury was instructed with CALJIC No. 8.10 that "[e]very person who unlawfully kills a human being with malice aforethought or during the commission or attempted commission of robbery and/or burglary . . . is guilty of the crime of murder." " 'In common understanding, this [language] would refer to the person who inflicted the fatal injury.' " (*Harden*, *supra*, 81 Cal.App.5th at pp. 54-55; accord, *People v. Bell* (2020) 48 Cal.App.5th 1, 16 ["This language [in CALJIC No. 8.10] on its face tells the jury that 'the person who unlawfully kills' is guilty of murder. In common understanding, this would refer to the person who inflicted the fatal injury."].) Where, as here, "[t]he jury was instructed on no alternative definition of murder" besides CALJIC No. 8.10, such as former CALJIC No. 8.27, a defendant's murder conviction "necessarily means the jury determined [he] actually killed [the victim]." (*Harden*, at p. 55;

15

accord, *People v. Bratton* (2023) 95 Cal.App.5th 1100, 1123 [because the jury was instructed with CALJIC No. 8.10 and not with former CALJIC No. 8.27, "the instructions indicated that to be guilty of murder at all, defendant has to be the actual killer"].) Accordingly, the jury necessarily found Hardin was the actual killer.

The jury also found true the allegation that "Hardin inflicted great bodily injury" on the victim within the meaning of section 1203.09, subdivision (a).[6]  Hardin contends the jury was not asked to find whether he "personally" inflicted the great bodily injury on Barber, rendering it uncertain whether the jury found Hardin himself inflicted the injury.  (Cf. *Harden*, *supra*, 81 Cal.App.5th at p. 55 [holding jury's finding that defendant "personally inflicted great bodily injury" on the victim under section 12022.7 supported conclusion jury necessarily found he was the actual killer].)  Considering the instructions as a whole, we conclude there is no room for such ambiguity here.  As discussed, the trial court gave no instructions as to any possible accomplice liability, nor did the court instruct with CALJIC No. 3.00 on the concept of liability for "principals" in a crime. (See former CALJIC No. 3.00 [providing "[e]ach principal, regardless of the extent or manner of participation is equally guilty"]; cf. § 12022.53, subd. (e)(1) [enhancement for personally

_____

[6]     "[P]robation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, a person who commits . . . one or more of the crimes listed in subdivision (b) against a person who is 60 years of age or older . . . and who during the course of the offense inflicts great bodily injury upon the person." (§ 1203.09, subd. (a).)  Murder is a crime listed in subdivision (b). (*Id.*, subd. (b).)

16

discharging a firearm and proximately causing great bodily injury or death applies "to any person who is a principal"].) Without such additional instructions, there is no reasonable likelihood the jury could have construed the language "Hardin inflicted great bodily injury" to extend the infliction of injury to someone other than Hardin.  (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1255-1256 [appellate court considering denial of § 1172.6 petition at prima facie stage "must consider the instructions together as a whole, to determine whether it is reasonably likely a jury would interpret an instruction in a particular way"].)

In any event, while the jury's true finding as to the great bodily injury allegation supports the conclusion the jury found Hardin was the actual killer, it is not necessary for that conclusion.  As we have discussed, the verdict finding Hardin guilty of first degree murder conclusively establishes the jury determined he was the actual killer, because the jury was instructed with only one definition of murder under CALJIC No. 8.10—that "every person who unlawfully *kills* a human being" is guilty of "murder."  (*Harden*, *supra*, 81 Cal.App.5th at pp. 54-55; accord, *People v. Bratton*, *supra*, 93 Cal.App.5th at p. 1123.)  Further, CALJIC No. 8.10 was followed by CALJIC No. 17.24.1, which defined the great bodily injury special circumstance.  That instruction stated, "If you find defendant . . . Hardin guilty of the crimes charged . . . you must determine whether or not the truth of this allegation has been proved." Thus, "the jury would not even reach the issue of special circumstances unless it first convicted [Hardin] of murder.  And as just explained, under CALJIC No. 8.10 a murder conviction required a finding that [Hardin] 'unlawfully killed'—that is, [he]

17

was the actual killer. A hypothetical juror who was not persuaded that [Hardin] actually killed [Barber] could not have voted that the special circumstance was true."[7] (*Harden*, at p. 55.)

> 2. *The proximate cause instruction did not create a possibility the jury convicted Hardin without finding he was the actual killer*

Hardin contends that because his jury was instructed on proximate cause with former CALJIC No. 8.55, which was not the case in *Harden, supra*, 81 Cal.App.5th 45, the jury could have convicted him of murder without finding he personally committed the homicidal act. (See *Lopez, supra*, 78 Cal.App.5th at p. 17 [a person who only "commits an act that is the proximate cause of the victim's death" is not an "actual killer" if he or she did not personally kill the victim].)

Former CALJIC No. 8.55 provided: "To constitute murder there must be, in addition to the death of a human being, an unlawful act which was a proximate cause of that death. [¶] A proximate cause of a death is a cause which, in natural and continuous sequence, produces the death, and without which the death would not have occurred." Hardin contends that, "[t]aken together, the instructions permitted the jury to find Hardin guilty

---

[7] Hardin also notes that unlike in *Harden*, his jury was not instructed with CALJIC No. 8.80.1 that "[i]f you are satisfied beyond a reasonable doubt that *the defendant actually killed* a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true." (*Harden, supra*, 81 Cal.App.5th at p. 54, italics added.) However, no additional confirmation is necessary to conclude the jury found Hardin to be the actual killer.

18

of first degree felony murder by finding:  1) He specifically intended to commit a robbery; 2) Barber was killed during the robbery; and 3) her death was proximately caused by the commission of the robbery."  Hardin thus argues his case is akin to *Lopez*, *supra*, 78 Cal.App.5th 1, in which the proximate cause instruction given during Lopez's trial was central to the appellate court's decision to reverse the denial of Lopez's section 1172.6 petition.

*Lopez* examined whether a section 1172.6 petitioner convicted of murder was necessarily convicted as an "actual killer."  Lopez was charged with the murder of a victim during a robbery and was "prosecuted solely under the theory he was the actual killer and committed the robbery alone."  (*Lopez*, *supra*, 78 Cal.App.5th at p. 15.)  At trial Lopez testified he and his drug dealer, Ivan Argueta, drove to the victim's apartment to help Argueta " 'move out' " after a fight with the victim, Argueta's boyfriend.  (*Id*. at p. 9.)  Lopez testified he remained in the living room, drinking a glass of water, while Argueta was "screaming" and "moving around" elsewhere in the house.  (*Ibid*.)  Lopez and Argueta then left with belongings from the apartment, and the victim was later found dead in the bedroom.  (*Id*. at pp. 6-7, 9.)

The trial court instructed the jury that to find Lopez guilty of murder the jury needed to find "[t]he defendant committed an act that caused the death" of another person (CALCRIM No. 520); and to find Lopez guilty of felony murder, it had to find he "caused the death of another person" (CALCRIM No. 540A).  (*Lopez, supra*, 78 Cal.App.5th at p. 16.)  The jury was further instructed on proximate cause that "[a]n act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act."  (*Ibid*.)

19

"The verdicts [left] two possibilities: (1) the jury found defendant guilty of first degree malice aforethought murder with a robbery-murder special circumstance, or (2) the jury found defendant guilty of first degree felony murder with a robbery-murder special circumstance." (*Id.* at p. 14.)

The *Lopez* court concluded the evidence and the jury instructions "created the possibility" the jury found Lopez guilty of murder without finding he personally killed the victim. (*Lopez, supra*, 78 Cal.App.5th at p. 20.) It reasoned "it was possible . . . the jury believed [Lopez's] testimony that he went to the victim's apartment with Argueta but disbelieved his testimony that he did not go into the bedroom and was not involved in the robbery or killing the victim." (*Ibid.*) "The jury might have found [Lopez], though not the actual killer, participated somehow in the home invasion robbery, and the victim's death was the direct, natural, and probable consequence of an act committed in the course of his participation." (*Id.* at p. 20.)

Although Hardin's jury received a proximate cause instruction (former CALJIC No. 8.55) that bore similarities to the one used in *Lopez*, *Lopez* is nevertheless distinguishable because Hardin's jury received CALJIC instructions on the definition of murder that were materially different from the CALCRIM instructions given in *Lopez*. The jury in *Lopez* was instructed under CALCRIM No. 540A that to find Lopez guilty of felony murder, it had to find the defendant "*caused* the death of another person." (*Lopez, supra*, 78 Cal.App.5th at p. 17, italics added.) By contrast, at Hardin's trial the jury was instructed it had to find Hardin "kill[ed] a human being" (CALJIC No. 8.10). (See *Harden*, 81 Cal.App.5th at pp. 57-58 [distinguishing *Lopez* based

20

on "materially different" jury instructions].)[8] Considering the effect of the proximate cause instruction in the context of the other instructions—most importantly CALJIC No. 8.10—it is not reasonably likely the jury could have determined it did not need to find Hardin was Barber's actual killer, but instead could have found him guilty of felony murder merely because he was a robbery participant who committed a non-homicidal act that proximately caused her death. (*People v. Pearson* (2013) 56 Cal.4th 393, 476; *People v. Williams*, *supra*, 86 Cal.App.5th at pp. 1255-1256 [jury instructions must be viewed together as a whole to determine whether it is reasonably likely a jury would interpret an instruction in a particular way].)

In sum, Hardin's record of conviction establishes, without any factfinding, weighing of evidence, or credibility determinations, that he was the actual killer. The superior court properly denied Hardin's section 1172.6 petition for failure to make a prima facie showing. 3

/ / /

/ / /

---

[8] Further, unlike in Hardin's trial, the jury in *Lopez* made no findings that the defendant inflicted great bodily injury on the robbery victim. (See *Harden*, *supra,* 81 Cal.App.5th at p. 58 [noting *Lopez* made "no mention . . . of any instructions regarding the defendant's personal infliction of great bodily injury"].)

## DISPOSITION

The order denying Hardin's petition for resentencing is affirmed.

STONE, J.

We concur:

MARTINEZ, P. J.

PULOS, J.*

---

*       Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.